UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK ALLEN HOWELL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.  2:23-cv-00120-JDP (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 11 & 15 |

Plaintiff challenges the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Both parties have moved for summary judgment. ECF Nos. 11, 15. For the reasons discussed below, plaintiff's motion is denied, and the Commissioner's cross-motion is granted.

**Standard of Review**

Under 42 U.S.C. § 405(g), the court reviews the Commissioner's decision to deny benefits to determine whether: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner applied correct legal standards. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1161 (9th Cir. 2012). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate

to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). To determine whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 710 (9th Cir. 1998).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court, however, will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

In January 2012, plaintiff filed applications for a period of disability, DIB, and SSI, alleging disability beginning December 28, 1999.[1] Administrative Record ("AR") 199-209. After his applications were denied initially and upon reconsideration, plaintiff appeared and testified at a

---

[1] Plaintiff subsequently amended his disability onset date to July 30, 2007. AR 830.

hearing before an Administrative Law Judge ("ALJ"). AR 36-78, 135-42, 144-48. On September 4, 2013, the ALJ issued a decision finding that plaintiff was not disabled. AR 21-30. The Appeals Council denied plaintiff's request for review. AR 1-6. Plaintiff then challenged the ALJ's decision by filing a complaint in District Court. AR 633-48. On March 9, 2017, the assigned magistrate judge granted plaintiff's motion for summary judgment and remanded the matter for further proceedings, finding that the ALJ failed to address the opinion of the consultative examining psychologist, T. Renfro, Psy.D, concerning Dr. Renfro's assessment that plaintiff has a moderate limitation in the ability to interact with coworkers. AR 636-43.

Following remand and a subsequent hearing, the ALJ issued a second denial. AR 550-64, 571-97. Plaintiff again sought review by filing a complaint in District Court. AR 931-33. While noting that "the record as a whole creates a serious doubt as to whether plaintiff was disabled," the magistrate judge granted plaintiff's motion for summary judgment and ordered remand because the ALJ, when formulating plaintiff's residual functional capacity, included a limitation to "simple" tasks and instructions without addressing Dr. Renfro's more restrictive limitation to "simple one- or two-step job instructions."[2] AR 934-43.

The motions currently before the court relate to subsequent proceedings, in which plaintiff appeared and testified at a third hearing, before a different ALJ. AR 854-87. On June 9, 2020, the ALJ determined that plaintiff was not disabled, making the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since July 30, 2007, the alleged onset date.
>
> * * *
>
> 3. The claimant has the following severe impairments: seizure disorder, mood disorder.

---

[2] An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec. Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (1996). It reflects the most a claimant can do despite his or her limitations. *See Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

\* \* \*

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant could never climb ladders, ropes, or scaffolds. The claimant is unable to work at heights, dangerous machinery, or with other similar dangerous objects. The claimant is capable of frequent climbing of stairs and ramps. The claimant could frequently crouch. The claimant could understand, remember, and apply simple instructions. The claimant could maintain concentration, persistence, or pace for simple repetitive tasks. The claimant could have no interactions with the public. The claimant could have occasional interactions with coworkers, but no participation in teamwork-type assignments. The claimant could adapt to simple workplace changes.

\* \* \*

6. The claimant has no past relevant work.

\* \* \*

7. The claimant was born [in] 1982 and was 24 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

\* \* \*

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

\* \* \*

4

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 30, 2007, through the date of this decision.

AR 830-46 (citations to the Code of Federal Regulations omitted).

Plaintiff submitted written exceptions to the ALJ's decision. On December 12, 2022, the Appeals Council denied the exceptions, and the ALJ's decision became the final decision of the Commissioner. AR 806-09; *see* 20 C.F.R. §§ 404.984, 416.1484. This action followed.

## Analysis

In his sole claim, plaintiff faults the ALJ for failing to provide legally sufficient reasons for rejecting Dr. Renfro's limitation to simple, one- or two-step job instructions in favor of the RFC's broader limitation to simple, repetitive tasks. Given the Commissioner's history of rejecting Dr. Renfro's opinion—which has resulted in two remands—plaintiff argues that the court should reverse the disability denial and award benefits. ECF No. 11 at 6-12.

**A.     Legal Standard for Evaluating Medical Opinion Evidence**

At issue is the ALJ's rejection of a portion of the consultative examining psychologist's opinion. Under the regulations in effect when plaintiff filed his applications for benefits in 2012, "[a]s a rule, . . . [t]he opinion of an examining physician is . . . entitled to greater weight than the opinion of a nonexamining physician."[3] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of an examining physician. *Id.* If the examining physician's opinion is contradicted by another doctor, the ALJ can reject it only by stating "specific and legitimate reasons" supported by substantial evidence in the record. *Id.*; *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The ALJ meets the specific and legitimate standard "by setting out a detailed and thorough summary of the

---

[3] The Social Security Administration has promulgated new regulations governing medical opinion evidence that apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Under the updated regulations, which do not apply here, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *See* 20 C.F.R. § 404.1520c(a). In other words, the new regulations no longer give "special deference" to the opinions of treating and examining physicians based on their relationship with the claimant. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

1  facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making
2  findings." *Reddick*, 157 F.3d at 725.  But the ALJ "need not accept the opinion of any physician
3  . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings."
4  *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (citation and quotation marks omitted).

5        The opinion of a non-examining state agency medical source "cannot by itself constitute
6  substantial evidence that justifies the rejection of the opinion of either an examining physician or
7  a treating physician." *Lester*, 81 F.3d at 831 (citations omitted).  However, a contrary opinion by
8  a non-examining medical expert may constitute substantial evidence when it is consistent with
9  other independent evidence in the record.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.
10 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 752 (1989)); *see also Bray v. Comm'r of Soc.
11 Sec. Admin.*, 554 F.3d 1219, 1221-22, 1227-28 (9th Cir. 2009) (finding that ALJ reasonably relied
12 "in large part on the DDS physician's assessment" when rejecting treating doctor's prescription
13 note concerning functional limitations).

14       **B.**    **Dr. Renfro's Assessment**

15       On April 14, 2012, Dr. Renfro, a licensed psychologist, performed a comprehensive
16 mental status evaluation of plaintiff.  AR 401-05.  During the exam, plaintiff complained of
17 depression, anxiety, paranoia, and seizures.  He reported that he is able to complete household
18 tasks, drive his truck, pay bills, handle cash appropriately, and go fishing and hunting.  AR 402-
19 03.  Dr. Renfro noted that plaintiff was anxious and depressed but maintained good eye contact
20 and was cooperative.  AR 403.  Plaintiff's speech, intellectual functioning, and thought processes
21 were normal, and the content of his thought was relevant and non-delusional.  The results of
22 plaintiff's memory tests showed no significant deficits: his forward digit span was five, his
23 backward digit span was four, and he could recall three items immediately and three items after
24 five minutes.  AR 403.  Plaintiff correctly answered that George W. Bush was President at the
25 time of the 9/11 terrorist attacks, and correctly named the current president of the United States,
26 the governor of California, the capital of California, and the capital of the United States.  AR 404.
27 When assessing concentration, Dr. Renfro noted that plaintiff was able to perform serial 3s, was
28 "able to follow [their] conversation well," and correctly spelled "world" forward, though not

1 backward. AR 404. Plaintiff was also able to do simple mathematical calculations. *Id.*

2 Dr. Renfro diagnosed plaintiff with a mood disorder, not otherwise specified, and polysubstance abuse or dependence in full remission, based on plaintiff's report that he used methamphetamines and acid heavily in high school. AR 402, 404. Dr. Renfro opined that plaintiff's psychological symptoms "could improve with active treatment over the next 12 months," but noted that it was unlikely that the symptoms would be completely remedied within one year. AR 404. For plaintiff's functional limitations, Dr. Renfro concluded in relevant part that plaintiff "is able to understand, remember, and carry out simple one or two-step job instructions" but "is unable to do detailed and complex instructions." AR 405.

### C. The ALJ's Rejection of Dr. Renfro's Limitation

In assessing plaintiff's mental abilities, the ALJ considered Dr. Renfro's limitation to simple, one- or two-step job instructions but was "not persuaded" that it captured "the most that [plaintiff] can perform." AR 844. Instead, the ALJ concluded that plaintiff has the ability to perform simple, repetitive tasks. *Id.*

There is a meaningful difference between a limitation to simple, repetitive tasks and a limitation to simple, one- or two-step job instructions; the former requires a higher reasoning level. The Dictionary of Occupational Titles ("DOT") includes a six-level reasoning development scale. *See* DOT App. C, 1991 WL 688702. Jobs involving simple, repetitive tasks generally fall within reasoning level two, requiring the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *Rounds v. Comm'r Soc. Sec. Admin.,* 807 F.3d 996, 1002-04 (9th Cir. 2015); DOT App. C, 1991 WL 688702. In contrast, jobs involving simple, one- or two-step instructions fall within reasoning level one, which requires the ability to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Rounds*, 807 F.3d at 1003; DOT App. C, 1991 WL 688702.

After summarizing the record in detail, the ALJ gave several reasons for rejecting Dr. Renfro's limitation to one- or two-step instructions: plaintiff's mental status examination by Dr.

7

Renfro yielded mostly normal results, the record generally lacked evidence of either a severe cognitive impairment or that plaintiff received mental health treatment, plaintiff's activities of daily living are not consistent with Dr. Renfro's limitation, and the non-examining state agency psychologist and psychiatrist offered contrary opinions. AR 844-45.

When reviewing Dr. Renfro's report, the ALJ noted that although plaintiff's mood was anxious and depressed, he denied receiving mental health treatment, and his mental status was generally within normal limits in other respects, including his thought processes, intellectual functioning, calculations, and concentration. AR 841-42. The ALJ pointed to specific clinical data in Dr. Renfro's report—namely, plaintiff's ability to perform serial 3s and to do simple mathematical calculations—as being inconsistent with Dr. Renfro's opinion that plaintiff was limited to jobs with simple, one- or two-step instructions. AR 844. Dr. Renfro also opined that plaintiff only had mild impairments in his ability to maintain persistence and pace—a determination that is likewise inconsistent with the limitation to one- or two-step instructions. In light of the ALJ's directive to evaluate inconsistencies and resolve conflicts in the evidence, the court finds that the ALJ reasonably discounted Dr. Renfro's limitation as overly restrictive in comparison to the noted "limited findings of abnormalities" in the clinical data. AR 843; *see Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that discrepancies between a doctor's assessment and his clinical notes and observations constitute a clear, convincing reason to reject that doctor's opinion); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (concluding that internal inconsistencies within a physician's report constitute relevant evidence supporting ALJ's denial). Accordingly, the lack of support from Dr. Renfro's own documented clinical observations constitutes a legally sufficient reason for rejecting the one- or two-step instructions limitation.

The ALJ also found that Dr. Renfro's limitation conflicted with the record as a whole, noting a lack of any objective evidence showing impaired cognitive functioning. In particular, the ALJ observed that there are no records reflecting that plaintiff has any learning disorder, no provider has indicated a need for formal cognitive testing, and plaintiff has not received any psychological treatment or therapy targeting concentration or any other cognitive impairment. AR

844. "[U]nexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can justify rejecting a plaintiff's subjective symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), superseded on other grounds by 20 C.F.R. § 404.1502(a). Although the foregoing authority concerns credibility evaluations, such determinations are nevertheless governed by the "clear and convincing reasoning" standard. Under the circumstances here, it follows that the general lack of treatment records reflecting cognitive or other mental health issues similarly constitutes a legally sufficient reason justifying the ALJ's rejection of Dr. Renfro's unsupported limitation to simple one- or two-step instructions.[4] *See* AR 37-546, 784-805. Indeed, the ALJ noted that Dr. Renfro did not review any medical records and that he based his assessment solely on his evaluation of plaintiff. AR 844.

Next, the ALJ stated that plaintiff's activities are not consistent with the limitation to one- or two-step instructions, as plaintiff reported that he hunts, fishes, occasionally drives, and cooks his own meals. At plaintiff's third hearing, he testified that his driver's license was suspended, but that he could drive around his local area if he "absolutely had to." AR 863-64. When questioned about hobbies, he stated that he tries to go fishing with his dad "as often as he can," and that his dad is the one who plans their fishing excursions. AR 867. He also stated that he hunts, but had not been hunting in around three or four years. AR 868. When asked about the kinds of meals he is able to cook, plaintiff testified that he went to culinary school and can "pretty much[ ] cook whatever." AR 869. An ALJ may reject an opinion when the physician sets forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, the ALJ was entitled to reject Dr. Renfro's limitation, considering that plaintiff's activities of fishing and cooking, and his ability to drive when necessary, reflect a higher level of cognitive functioning than following simple, one- or two-step instructions.

In support of the RFC's limitation to simple, repetitive tasks, the ALJ gave significant

---

[4] In evaluating plaintiff's failure to receive mental health treatment, the ALJ considered plaintiff's explanation that he has been unable to obtain medical care because of problems finding doctors through his Medi-Cal insurance. The ALJ found plaintiff's excuse not credible, noting that plaintiff resides in a suburb of Sacramento, a major metropolitan area with multiple medical providers that accept Medi-Cal. AR 842.

weight to the opinions of a non-examining psychologist and psychiatrist, finding that these medical sources reviewed the entirety of the medical evidence, including Dr. Renfro's assessment, and that they made findings consistent with the record. AR 843-44. In May 2012, at the initial stage of review, the state-agency psychologist reviewed the medical evidence and found that plaintiff was "not significantly limited" in his abilities to carry out very short and simple instructions, maintain attention and concentration for extended periods, and make simple work-related decisions; and that plaintiff was "moderately limited" in his ability to understand, remember, and carry out detailed instructions. AR 104-05. The state-agency psychologist opined that plaintiff "can understand, remember, [and] carry out simple w[ork] instructions," and "can adapt to a w[ork] setting that is simple [and] routine." AR 106. In December 2012, a state-agency psychiatrist reviewed plaintiff's file at the reconsideration stage and affirmed, determining that plaintiff may only "be limited in [his] ability to perform work that is difficult to learn and remember[.]" AR 132. Given the record here, the ALJ permissibly relied on the opinions of the state-agency reviewers concerning plaintiff's ability to perform "simple" and "routine" work, as this determination is consistent with plaintiff's activities and Dr. Renfro's clinical findings, and there are no treatment records showing that plaintiff's cognitive abilities require a stricter limitation.

### D. Harmless Error

Because the ALJ interpreted the evidence rationally and gave valid reasons supporting his analysis, the court upholds the ALJ's rejection of Dr. Renfro's limitation. But even if the ALJ had improperly disregarded the limitation to one- or two-step instructions, that error would have been harmless.

At step five, the ALJ can rely on the testimony of a vocational expert ("VE") as to: "(1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also Bayliss*, 427 F.3d at 1218 ("An ALJ may take administrative notice of any reliable job information, including information provided by a VE."). Here, in concluding that plaintiff is not disabled, the ALJ cited the VE's testimony that an individual with plaintiff's

residual functional capacity can perform, among other things, the job of produce sorter, of which there are 135,000 nationally. AR 845-46, 880-81. Because this job corresponds to reasoning level one, it is consistent with Dr. Renfro's assessment limiting plaintiff to simple, one- or two-step job instructions. *See* AR 880; DOT 529.687-186. As shown, even if plaintiff's RFC had expressly included Dr. Renfro's limitation, the ALJ still satisfied his burden at step five, since there are suitable jobs for plaintiff existing in significant numbers in the national economy. *See, e.g.*, *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (finding no error in ALJ's determination that 25,000 national jobs qualified as a significant number of jobs "in several regions of the country") (citing 42 U.S.C. § 1382c(a)(3)(B)).

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 11, is denied.

2. The Commissioner's cross-motion for summary judgment, ECF No. 15, is granted.

3. The Clerk of Court is directed to enter judgment in the Commissioner's favor.

IT IS SO ORDERED.

Dated:   December 5, 2023                                      _____
                                                              JEREMY D. PETERSON
                                                              UNITED STATES MAGISTRATE JUDGE

11